159 Cal.App.2d Supp. 875 (1958)
JOSEPH ESPREE, Respondent,
v.
WESTERN PIONEER INSURANCE COMPANY (a Corporation), Appellant.
California Court of Appeals. 
Apr. 18, 1958.
 Ericksen & Ericksen and Robert H. Kroninger for Appellant.
 McDonald, Brunsell, Brethauer & Walters for Respondent.
 WAGLER, P. J.
 Plaintiff, as insured, brought suit against the defendant, as insurer, to recover the cost of repairing his truck which he contends was damaged as the result of an "upset." Judgment was for plaintiff and defendant appeals.
 In April 1956, plaintiff purchased a 1951 ten-wheel dump truck from Cook Brothers Truck and Equipment Company. At the same time he purchased insurance coverage on said truck from the defendant.
 Thereafter plaintiff received through the mail from the defendant a "Certificate of Insurance" which specified coverage [159 Cal.App.2d Supp. 877] for "bodily injury liability," "property damage liability," "collision or upset," and fire and theft. This certificate also contained a "loss payee" clause providing that any loss due to collision or upset, fire or theft, was payable to the lienholder (Cook Brothers Truck and Equipment Company) to the extent of its lien. The certificate was actually a copy of the first page of a policy of insurance which was on a date not disclosed by the record delivered to the lienholder. The "Certificate of Insurance" contained none of the insuring agreements, exclusions or conditions of the policy.
 On August 15, 1956, while engaged in hauling fill to the Oakland Army Base, plaintiff was required to back off the road approximately 50 feet on to fill which had previously been dumped. The plaintiff's version of what happened thereafter is contained in a statement written on August 16th by the claims agent of the defendant and signed by the plaintiff. This statement reads as follows: "I backed the truck into position and started the hydraulic hoist to dump the load. When the bed got half-way up, the earth under the right rear wheel gave way from the weight and caused the right rear wheel to sink into to about 2 or 3 inches from the axle. This put a strain on the frame and the weight of the load in the bed caused the frame of the bed to break and the bed itself fell or was twisted off to the right." The plaintiff who was the only witness to the occurrence gave substantially the same version at the trial. There was, however, additional testimony to the effect that when plaintiff got out of the truck to see what had happened, the right rear wheels, all four of them were in the earth. The left wheels, all five of them were off the ground 10 to 12 inches and the only thing that was preventing the truck from tipping over was the right rear corner of the truck bed. The subframe of the truck was sheared off and the hoist rod was broken.
 Upon this evidence, the trial court found that the truck "lost its equilibrium by the right wheels settling into said soil and said truck was thereby caused to suffer an upset." Judgment was rendered in the sum of $697.50.
 The defendant offered in evidence a specimen of the policy which had been delivered to the lienholder for the purposes of establishing that the loss was one not covered by the terms of said policy. The trial court admitted the specimen policy in evidence for the "limited purpose" only of permitting the defendant to show what the terms of the complete policy [159 Cal.App.2d Supp. 878] were, making it clear that he did not consider the exclusions of the policy binding upon the plaintiff because same had never been delivered to the plaintiff and because plaintiff was unaware of its provisions.
 Appellant assigns as grounds for reversal:
 (1) Insufficiency of the evidence to support the finding of "upset."
 (2) If there was an upset, it was caused by a "mechanical breakdown" and therefore coverage was excluded by paragraph r., of the policy, which reads as follows:
 "This policy does not apply to any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure unless such damage is the result of other loss covered by this policy."
 (3) Error on the part of the trial court in ruling that the specimen policy was not admissible for all purposes.
 [1] The rules governing the construction of insurance policies of all kinds have been succinctly stated by the Supreme Court of this state as follows: "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] [2] If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citations.] [3] If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured." Continental Casualty Co. v. Phoenix Construction Co., 46 Cal.2d 423, 437 [296 P.2d 801].
 [4] Obedient to the foregoing rules of construction, the courts have consistently held that in the absence of express language in the policy to the contrary a vehicle must be deemed to have suffered an "upset" once it loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress. It is not necessary that the vehicle turn bottom side up or, for that matter, even over on its side. Carl Ingalls, Inc. v. Hartford Fire Ins. Co., 137 Cal.App. 741 [31 P.2d 414]; Jack v. Standard Marine Ins. Co., 33 Wn. 2d 265 [205 P.2d 351, 8 A.L.R.2d 1426]; Radella v. Bankers [159 Cal.App.2d Supp. 879] Mutual Fire Ins. Co., of Lancaster, 165 Pa.Super. 633 [70 A.2d 407]; Ferguson v. Farm Bureau Mutual Ins. Co., Inc. 171 Kan. 679 [237 P.2d 234]; Home Service Casualty Ins. Co. v. Barry, (Tex.Civ.App.) 277 S.W.2d 280; Mercury Ins. Co. v. Varner, (Tex.Civ.App.) 231 S.W.2d 519; Moore v. Western Assur. Co. of Toronto, 186 S.C. 260 [195 S.E. 558].
 [5] Since, in the instant case, not only the truck bed but the vehicle itself lost its equilibrium and would have tipped completely over had not one corner of the truck bed come to rest on the soft earth, the only logical conclusion to be reached was that reached by the trial court, to wit, that the damage to the vehicle was the result of "upset."
 [6] Appellant's second contention cannot stand for two reasons: First, all of the evidence points clearly to the fact that the process of upsetting came first and that the damage to the truck was the result of this process. Secondly, even if the sequence of events were reversed, the defendant could not escape liability by virtue of paragraph r., of the policy excluding loss due to mechanical breakdown because this exclusion was not binding on the plaintiff.
 [7] Section 383.5 of the Insurance Code of this state at the time in question provided in part as follows: "Every contract of insurance against hazards incident to ownership, maintenance, operation and use of motor vehicles shall be embodied in a document. The original or a true copy of such document shall be delivered to each owner. ... 'Owner' as used in this section means any person who is named as an insured in such contract of insurance or document, or in a loss payable clause therein, and, whether or not he is named therein, the vendee, pledgor, or chattel mortgagor of a motor vehicle where insurance contracts subject to this section are procured with respect to the motor vehicle by or on behalf of either party to the purchase, pledge, or mortgage."
 In Frieze v. West American Ins. Co., 188 F.2d 331, the United States Circuit Court (Eighth Circuit) had before it a problem almost identical to the one here presented. The court, referring to section 383.5 supra, there said, "... the State of California has adopted as the public policy of that State the requirement that the document constituting the original policy or a true copy thereof shall be delivered to each 'owner' in order that fraud or mistake in connection with the transaction of insurance covering motor vehicles be prevented. ... we must reach the conclusion that a cardinal purpose of the statute was to acquaint the assured with all [159 Cal.App.2d Supp. 880] of the terms of the contract of insurance as a necessary incident to the prevention of fraud or mistake concerning the coverage and the conditions attached to the coverage. It should follow, we believe, that the entire contract of insurance must be included in the 'true copy' required, and that one who has failed to follow the statutory requirement and acquaint another party to the contract with the terms of the contract in the manner required by the California statute may not enforce against the other a condition not disclosed in the manner required by the statute."
 For the same reasons we hold that the exclusions contained in the complete contract of insurance are not binding on the plaintiff herein. It follows that the ruling of the trial court on the admissibility of the entire contract was proper.
 One further point, however, requires consideration. The amount of the plaintiff's repair bill was $927.50. The certificate of insurance contained a "$250 deductible" provision. Yet judgment was rendered in favor of plaintiff for $697.50. It follows (and this plaintiff concedes) that the judgment should be reduced to the sum of $677.50.
 As so modified, the judgment is affirmed.
 Neither party to recover costs.
 Ledwich, J., and Hoyt, J., concurred.