Lee BROWN, Plaintiff and Appellant,

v.

BOARD OF EDUCATION OF the MORGAN COUNTY SCHOOL DISTRICT, Defendant and Respondent.

No. 14468.

Supreme Court of Utah.

Feb. 28, 1977.

A. M. Ferro and Michael T. McCoy, Salt Lake City, for plaintiff and appellant.

Merlin R. Lybbert and George A. Hunt, of Worsley, Snow and Christensen, Salt Lake City, for defendant and respondent.

BALLIF, District Judge:

The plaintiff appeals an adverse decision of both the trial judge and of a jury based on their answers to written interrogatories. The case involves the rights of plaintiff, a school teacher in Morgan County, to continued employment with the Board of Education of the Morgan County School District, or the benefit of the "Utah Orderly School Termination Procedures Act."[1] The plaintiff first signed a contract with defendant in 1971–72 pursuant to which he was the head wrestling coach and assistant football coach and taught several classes. His employment was renewed for the years 1972–73 and 1973–74 and he continued to coach wrestling and football and to teach various subjects for those years. Plaintiff was paid a base annual salary and in addition a percentage of the base for his coaching duties.

The plaintiff was a good teacher and his athletic teams did well in competition. During the course of the 1973–74 year plaintiff did not wish to continue with his coaching responsibilities and wrote a letter to defendant resigning his duties as a coach. The defendant took the position that plaintiff was hired to teach and coach and refused to agree that the duties were separate and thus treated the plaintiff's letter as a resignation of all duties. Although meetings concerning plaintiff's employment occurred thereafter, plaintiff did not withdraw his letter of resignation, and litigation ensued.

In the District Court a judgment was entered in favor of defendant wherein the trial court found " . . . as a matter of law the employment contract between plaintiff and defendant was divisible only upon the mutual consent of the parties and the defendant not having consented thereto, the plaintiff's resignation from one part of the contract was a resignation from all of the contract . . . " The effect of the decision is that the plaintiff was not terminated by defendant, but resigned of his own choosing and, therefore, the Utah Orderly School Termination Procedures Act was found not to apply to this case.

Before concluding as above indicated, the court had submitted written interrogatories on the divisibility question to a jury which heard all of the evidence and returned findings consistent with the court's finding on that issue. The plaintiff now seeks a reversal of the trial court's finding, and asks this court to grant him judgment in the amount found by the jury that he was damaged by loss of employment, and to reinstate him as a teacher in the defendant school district.

■ The question to be decided by this court is whether, as a matter of law, the

---

1. Utah Code Annotated, Sec. 53–51–1 et seq. (Supp.1975).

contract in question is divisible as to teaching and coaching. If it is not, does a review of the record herein support the lower court's judgment of dismissal against plaintiff, where " . . . On appeal the evidence is viewed in the light most favorable to sustain the lower court, and the findings will not be disturbed unless they are clearly against the weight of the evidence or it manifestly appears that the court misapplied the law to the established facts." [2]

■■ While it is for the court to interpret and assess the meaning of a contract,[3] it is proper for issues of fact to be submitted to a jury. In this case the jury resolved the factual dispute as to effect of plaintiff's letter of January 8, 1974, by finding it a resignation from coaching duties only. However, the effect of such a resignation is for the court to decide after a determination has been made on the question of divisibility.

■ This court has repeatedly addressed itself to the question of severability of agreements and the enforceability of the parts if severable. Fundamental to such considerations are basic contract principles as to the parties' intent which is derived from looking at the entire contract and the relationship of the parts to the whole and whether it was intended that the total agreement be severable. In exploring a contract on this issue the fact finder " . . . may and should look to extraneous evidence concerning the background and surrounding circumstances in order to make that determination." [4] This view is consistent with that of the Authorities in the field of Contracts, and has been applied recently in the State of Oregon in a case presenting the same questions as here considered as to a school contract requiring teaching and coaching.[5]

The law cited by counsel for plaintiff to support his position that the contract is divisible as a matter of law is found at 6 Williston on Contracts, Sec. 860 p. 255 (3rd Ed. 1962). This treatise provides:

"The distinguishing mark of a divisible contract is that it admits of apportionment of the consideration on either side so as to correspond to the unascertained consideration on the other side. Where such a purpose appears in the contract or is clearly deducible therefrom, *it is allowed great significance in ascertaining the intention of the parties. . . . when there are no opposing signs . . . . Where these latter are present it becomes a question of preponderance.*" [Emphasis supplied.]

An analysis of the quoted portion from Professor Williston shows that the concept there set forth does not vary from the Utah law and other materials of Williston heretofore cited. The underlined portion shows that an apportionment of consideration aids in determining what the parties' intent was, and is but one of many facts and circumstances surrounding entering into the agreement which must be considered in determining the parties' intent.

■ Plaintiff must show this court that in looking at all of the background, surrounding facts and the agreement itself, reasonable minds could not conclude other than that the parties intended the agreement to be severable as to teaching and coaching. This, the record does not support as can best be illustrated by the following summary and excerpts from the plaintiff's testimony. After reviewing his first educational employment in 1971, plaintiff states the circumstances which attracted him to the defendant school district and when asked by counsel:

2. *Hardy v. Hendrickson,* 27 Utah 2d 251, 495 P.2d 28.

3. *Ephraim Theatre Company v. Hawk,* 7 Utah 2d 163, 321 P.2d 221.

4. *Thomas J. Peck & Sons, Inc. v. Lee Rock Products, Inc.,* 30 Utah 2d 187, 515 P.2d 446;

*Coppedge v. Leiser,* 71 Idaho 248, 229 P.2d 977; Restatement of Contracts, Section 235.

5. Williston on Contracts, Vol. 2, p. 1652; Rev. Ed., Vol. 3, p. 2422; *George v. School Dist. No. 8R of Umatilla County,* 7 Or.App. 183, 490 P.2d 1009 (1971).

Q. And following your year of employment at Churchill Junior High School, what did you do?

A. The following year, and the spring of '71, I had a friend who was going to be employed as a football coach here at Morgan. They needed a person to come to Morgan and teach some zoology, phys ed, *and* coach wrestling, and assist him in football. And I came to Morgan at that time. [Emphasis supplied.]

The balance of plaintiff testimony shows he was employed by defendant for three years, the first of which his duties were to teach regular classes and coach wrestling and football. The subsequent years' duties remained the same, except for a change in teaching assignments. From the beginning and through the third year plaintiff continued as the wrestling coach and assistant football coach.

The record further discloses that plaintiff submitted a teacher application form on June 25, 1971, in which he lists as his present occupation, school teacher and coach. The application form also under the line "Special Abilities" lists coaching football, wrestling, baseball, track. The inquiries made by the form and the responses given clearly indicate that the plaintiff considered himself a teacher-coach who had special experience in athletics. On the contract of June 18, 1973, signed by plaintiff and the superintendent of defendant, the plaintiff was advised of his inclusion in the master contract and the specific terms of his employment were outlined providing the number of days and a salary, and the following statement, "Amounts for extra services will be added when definite assignments have been made." It is also significant that the probationary contract signed for the 1971–72 school year and that for the 1972–73 school year contained provisions in paragraph (8A) of each to the effect that the teacher agrees to serve during the time and place designated by the Board, " . . . and faithfully to perform the duties assigned to him or her. . . . "

A further review of the record serves no purpose. The record in this case does not establish a contract that is severable as a matter of law. Suffice it to say there is ample evidence from the agreement, the background of dealings in past years, and plaintiff's own interpretation of the agreement and the need for defendant's consent to a change of assignment, to support the trial court's findings. Since no agreement was reached to permit plaintiff to discontinue coaching, his resignation "was from all of the contract." Further, the record clearly supports the finding of the judge and jury that the bargain was for a teacher-coach and not for either one.

The judgment of the District Court is affirmed. No costs are awarded.

ELLETT, CROCKETT and MAUGHAN, JJ., concur.

HENRIOD, C. J., does not participate herein.